CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 01 2020

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION
OCTOBER 2020 SESSION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 6:20-CR-13 |
| | ) | |
| v. | ) | **SEALED** |
| | ) | |
| | ) | **INDICTMENT** |
| CHERIE ANNE WASHBURN | ) | |
| | ) | **In Violation of:** |
| | ) | |
| | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 1341 |
| | ) | 18 U.S.C. § 1014 |

## INDICTMENT

The Grand Jury charges that:

### INTRODUCTION

1. At all times relevant to this Indictment the defendant, CHERIE ANNE WASHBURN ("WASHBURN"), was a resident of Lynchburg, Virginia in the Western District of Virginia.

2. At all times relevant to this Indictment, WASHBURN was licensed by the Virginia State Bar ("VSB") to practice law in the Commonwealth of Virginia.

3. Beginning in or around June 2015, WASHBURN began practicing law at the law firm Wetzel and Washburn, PLLC, located in Forest, Virginia in the Western District of Virginia. WASHBURN held herself out as an attorney who specialized in elder law and estate planning.

### THE SCHEME TO DEFRAUD

4. From as early as in or about November 2015, and continuing up until February

1

2019, WASHBURN engaged in a scheme or artifice to defraud and to obtain money or property by means of false or fraudulent pretenses, representations, or promises, from victims C.A. and D.F.

### Victim C.A.

5. Generation Solutions is a business entity that provides care management services for senior citizens. In or about October 2015, a representative from Generation Solutions referred victim C.A. to WASHBURN for the purpose of obtaining elder legal services. On or about November 5, 2015, WASHBURN and C.A. entered into a "Senior Legal Services Contract." C.A. also appointed WASHBURN as Power of Attorney ("POA") for financial matters.

6. Under the terms of the POA Agreement, WASHBURN was "entitled to reasonable compensation and reimbursement for reasonable expenses for services rendered as agent under this power of attorney, if desired." The POA Agreement included a clause that the POA "MAY NOT use my property to benefit the agent or a person to whom the agent owes an obligation of support unless I have included that authority in the Special Instructions." No such authority was included in the Special Instructions of the POA Agreement.

### Victim D.F.

7. In or around May 2016, a representative from Generation Solutions referred victim D.F. to WASHBURN for the purpose of obtaining elder legal services. D.F. suffered from age-related cognitive impairment. On or about May 4, 2016, D.F. appointed Washburn as Power of Attorney ("POA") for financial matters. Under the terms of the POA Agreement, WASHBURN was "entitled to reasonable compensation and reimbursement for reasonable expenses for services rendered as agent under this power of attorney, if desired." The POA Agreement included a clause that the POA "MAY NOT use my property to benefit the agent or a person to whom the agent

owes an obligation of support unless I have included that authority in the Special Instructions." No Special Instructions were included in the POA Agreement.

## WASHBURN's Use of Funds for Personal Expenses

8.  Notwithstanding the terms of these Agreements, WASHBURN used her position as POA to misappropriate and attempt to misappropriate money and property belonging to C.A. and D.F. for her own personal benefit. As part of the scheme, WASHBURN regularly used funds obtained from the victims to pay for personal expenses and not for the benefit of either C.A. or D.F. These transactions include:

   a. On or about November 16, 2016, WASHBURN, acting as C.A.'s POA, wrote a $4,200 check to "CASH" from a SunTrust checking account belonging to C.A. On the memo line of the check, WASHBURN falsely represented that the purpose of the check was for C.A.'s benefit. In fact, WASHBURN deposited the check into her personal account at Wells Fargo and used the money to make a payment on her personal credit card.

   b. On or about November 6, 2017, WASHBURN, acting as C.A.'s POA, wrote a $40,000 check to herself from a SunTrust checking account belonging to C.A. WASHBURN falsely represented that the purpose of the check was "To pay all exp. & funeral exp." In fact, only approximately $5,778 was used for C.A.'s benefit. WASHBURN used the rest for personal expenses.

   c. On or about March 29, 2018, WASHBURN, acting as D.F.'s POA, wired $5,100 from a Wells Fargo account belonging to D.F. into WASHBURN's own Wells Fargo account. Later that same day, WASHBURN wired $6,000 to pay for a personal expense.

## WASHBURN's Attempt to Make Herself C.A.'s Beneficiary

9. On or about March 10, 2017, WASHBURN notified D.H., a financial planner for C.A., that C.A. wanted to change the beneficiary on two investment accounts held at T.D. Ameritrade. At this time, these accounts had a combined value of approximately $288,000. WASHBURN told D.H. that WASHBURN would be the new beneficiary for these accounts for the purpose of directing charitable donations on C.A.'s behalf.

10. On or about March 14, 2017, WASHBURN completed a beneficiary designation form and a non-probate transfer on death form (collectively "beneficiary forms") naming herself as C.A.'s beneficiary for two investment accounts. On these forms, WASHBURN falsely identified herself as C.A.'s "Friend."

11. On or about June 14, 2017, D.H. met with C.A. in person regarding the change of beneficiary. WASHBURN was not present at this meeting. During this meeting or shortly thereafter, C.A. completed new beneficiary forms naming two charitable organizations as her beneficiaries. WASHBURN was not listed as a beneficiary.

## WASHBURN's Fraudulent Donations to Charity

12. On or about May 1, 2017, WASHBURN accepted a position as an attorney and grant writer for Impact Living Services ("ILS"). She began employment on or about July 1, 2017.

13. At all times relevant to the Indictment, P.T. was the President of ILS. In addition, P.T. served as Chief Executive Officer of Asian Hope, a 501(c)(3) organization. WASHBURN falsely represented to P.T. that both C.A. and D.F. wanted to make donations and support Asian Hope.

14. Between July 6, 2017 and February 15, 2018, WASHBURN, acting as POA, made

4

a series of donations to Asian Hope from accounts belonging to C.A. and D.F.:

    a. On or about July 6, 2017, WASHBURN signed a $300 check to Asian Hope from an account belonging to C.A.;

    b. On or about July 6, 2017, WASHBURN signed a $1,000 check to Asian Hope from an account belonging to D.F.;

    c. On or about October 27, 2017, WASHBURN signed a $10,000 check to Asian Hope from an account belonging to C.A.;

    d. On or about January 31, 2018, WASHBURN signed a $15,000 check to Asian Hope from an account belonging to D.F.;

    e. On or about February 15, 2018, WASHBURN caused $5,885 in funds belonging to C.A. to be donated to Asian Hope.

    f. The above donations benefitted WASHBURN by enhancing her standing with her employer.

### Fraudulent Investment with P.T.

15. Sometime in 2017, WASHBURN learned that P.T. invested in real estate projects. In or around December 2017, WASHBURN asked P.T. if she could make an investment in one of his real estate projects. WASHBURN and P.T. agreed for WASHBURN to invest $50,000. As a condition of the investment, WASHBURN agreed that no additional parties would be involved. WASHBURN falsely represented to P.T. that she planned to obtain the $50,000 by withdrawing funds from her retirement account.

16. On or about December 15, 2017, WASHBURN wrote a check from her Wells Fargo account to P.T. in the amount of $25,000. Contrary to WASHBURN's representations to P.T., the

funds from this check did not come from WASHBURN's retirement account. Instead, WASHBURN primarily used funds from the $40,000 check from C.A. described in paragraph 8.b of this Indictment.

17. On or about December 28, 2017, WASHBURN caused to be delivered a check to P.T. for $25,000 from an account belonging to C.A. WASHBURN did not tell P.T. that the investment would be for C.A.'s benefit.

18. On or about May 7, 2018, WASHBURN received a check from P.T. in the amount of $5,000. The check represented a return on the $50,000 investment. WASHHBURN deposited the check in her personal Wells Fargo account. WASHBURN did not remit any portion of the $5,000 into C.A.'s accounts.

### Fraudulent Purchase of 111 Wyndsong Place

19. Between approximately April 11, 2018 and June 5, 2018, the exact dates being unknown, WASHBURN engaged in a scheme to purchase a real property located at 111 Wyndsong Place, Lynchburg, Virginia ("111 Wyndsong") by using monies belonging to C.A. and to a mortgage lender. The purchase of 111 Wyndsong was for the benefit of WASHBURN and not for the benefit of C.A.

20. On or about April 11, 2018, WASHBURN applied for a mortgage loan from Quicken Loans to finance the purchase of 111 Wyndsong Place. Quicken Loans is a mortgage lending business as defined by Section 27 of Title 18 of the United States Code.

21. WASHBURN entered into an agreement with the sellers on or about April 14, 2018 to purchase 111 Wyndsong for $219,000.

22. During the mortgage lending process, WASHBURN represented to Quicken Loans

that 111 Wyndsong would function as her primary residence and that WASHBURN would be the sole owner of the property. WASHBURN did not inform Quicken Loans that C.A. would reside at 111 Wyndsong or have any ownership interest in the property.

23. On or about April 18, 2018, a representative from Quicken Loans notified WASHBURN that WASHBURN needed to pay off her Wells Fargo VISA card as a condition of loan approval. During this conversation, WASHBURN informed the representative that she would be receiving money from her great-aunt. On or about April 20, 2018, WASHBURN transferred $3,025 from a Wells Fargo account belonging to D.F. to make a $3,025 payment on WASHBURN's Wells Fargo VISA.

24. On or about April 22, 2018, WASHBURN submitted a gift letter to Quicken Loans falsely stating that C.A. provided WASHBURN with a gift of $40,000 for the purchase of 111 Wyndsong. The gift letter also falsely stated that WASHBURN was C.A.'s great-niece. On or about April 23, 2018, WASHBURN deposited a check in the amount of $45,000 from C.A.'s SunTrust account to WASHBURN's Wells Fargo account.

25. On or about April 2, 2018, WASHBURN deposited a $3,500 check written from C.A.'s SunTrust account into WASHBURN's Wells Fargo account. WASHBURN later used this money to make an earnest money deposit of $3,000 to the sellers of 111 Wyndsong.

26. On or about April 24, 2018, a representative from Quicken Loans requested documentation for the origin of the $3,500 deposited into WASHBURN's account on April 2, 2018. WASHBURN falsely stated that the money came from her great-aunt, C.A., to help pay for WASHBURN's planned adoption.

27. On or about May 31, 2018, WASHBURN closed on 111 Wyndsong. WASHBURN

financed the purchase using $49,325.63 from her Wells Fargo account and a $175,200 loan from Quicken Loans.

## COUNTS 1-10
(Wire Fraud)

The Grand Jury Charges:

28. Paragraphs 1-27 of the Introduction to the Indictment are incorporated by reference into these Counts of the Indictment as if fully set forth herein.

29. On or about the following dates, in the Western District of Virginia and elsewhere, the defendant, CHERIE ANNE WASHBURN, knowingly executed and attempted to execute a scheme and artifice to defraud victims C.A. and D.F., and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

30. On or about each of the dates set forth below, in the Western District of Virginia and elsewhere, defendant CHERIE ANNE WASHBURN, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | DESCRIPTION |
| --- | --- | --- |
| ONE | November 16, 2016 | $4,200 check to "CASH" from SunTrust checking account belonging to C.A. |
| TWO | November 6, 2017 | $40,000 check to WASHBURN from a SunTrust checking account belonging to C.A. |
| THREE | October 27, 2017 | $10,000 check to Asian Hope from a SunTrust account belonging to C.A. |
| FOUR | December 28, 2017 | $25,000 check to P.T. from a SunTrust account belonging to C.A. |
| FIVE | January 31, 2018 | $15,000 check to Asian Hope from Wells Fargo account belonging to D.F. |

8

| SIX | February 15, 2018 | $5,885 check to Asian Hope from SunTrust account belonging to C.A. |
| SEVEN | March 29, 2018 | $5,100 wire from a Wells Fargo account belonging to D.F. |
| EIGHT | April 2, 2018 | $3,500 check to WASHBURN from a SunTrust account belonging to C.A. |
| NINE | April 20, 2018 | $3,025 wire from Wells Fargo account belonging to D.F. |
| TEN | April 23, 2018 | $45,000 check to WASHBURN from SunTrust account belonging to C.A. |

31. All in violation of Sections 1343 and 1349 of Title 18 of the United States Code.

## COUNT 11
(Mail Fraud)

The Grand Jury Charges:

32. Paragraphs 1-27 of the Introduction to the Indictment are incorporated by reference into these Counts of the Indictment as if fully set forth herein.

33. On or about March 15, 2017, in the Western District of Virginia, for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, Defendant CHERIE WASHBURN knowingly caused to be delivered by mail two fraudulent beneficiary forms described in paragraphs 9-11 of this Indictment.

34. All in violation of Sections 1341 and 1349 of Title 18 of the United States Code.

## COUNT 12
(False Statement to a Mortgage Lender)

The Grand Jury Charges:

35. Paragraphs 1-27 of the Introduction to the Indictment are incorporated by reference into these Counts of the Indictment as if fully set forth herein.

36. On or about April 22, in the Western District of Virginia, defendant CHERIE

9

WASHBURN knowingly made a false statement for the purpose of influencing the action of Quicken Loans, a mortgage lending business, in connection with a loan for the purchase of 111 Wyndsong Place, Lynchburg, VA.

37. All in violation of Section 1014 of Title 18 of the United States Code.

## COUNT 13
(False Statement to a Mortgage Lender)

The Grand Jury Charges:

38. Paragraphs 1-27 of the Introduction to the Indictment are incorporated by reference into these Counts of the Indictment as if fully set forth herein.

39. On or about April 24, 2018 in the Western District of Virginia, defendant CHERIE WASHBURN knowingly made a false statement for the purpose of influencing the action of Quicken Loans, a mortgage lending business, in connection with a loan for the purchase of 111 Wyndsong Place, Lynchburg, VA.

40. All in violation of Section 1014 of Title 18 of the United States Code.

## NOTICE OF FORFEITURE

1. Upon conviction of one or more of the felony offenses alleged in this Indictment, defendant shall forfeit to the United States:

   a. any property, real or personal, which constitutes or is derived from proceeds traceable to said offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

2. The property to be forfeited to the United States includes but is not limited to the following property:

a. **Money Judgment**

Not less than $233,262.27 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate was obtained directly or indirectly as a result of said offenses or is traceable to such property.

3. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p).

A TRUE BILL this __1__ day of October, 2020.

/s/Foreperson
FOREPERSON

DANIEL P. BUBAR
ACTING UNITED STATES ATTORNEY

11