UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No.: 6:20-cr-00013 |
| | ) |
| CHERIE ANNE WASHBURN | ) |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S FIRST MOTION IN LIMINE**

The United States respectfully submits this Response in Opposition to Defendant Cherie Anne Washburn's First Motion in Limine and Memorandum in Support. (ECF Nos. 34 & 35). For the reasons set forth below, Defendant's motion should be denied.

## INTRODUCTION

In Virginia, an attorney under investigation by the Virginia State Bar ("VSB") for misconduct may consent to have her bar license revoked. Va. Sup. Ct. R., Pt. 6, § IV, ¶ 13-28.A. To do so, the attorney must provide an affidavit that includes the following sworn statements: (1) that the attorney's consent is free and voluntary and not attributable to "coercion or duress"; (2) that the attorney is aware of the nature of the allegations; (3) that the material facts upon which the allegations are based are true; and (4) that "the Attorney could not successfully defend" against the allegations in a disciplinary proceeding. *Id*. However, the Rules of the Supreme Court of Virginia governing the VSB ("VSB Rules") limit the permissible uses of this affidavit: "The admissions offered in the affidavit consenting to Revocation shall not be deemed an admission in any proceeding except one relating to the status of the Attorney as a member of the Bar." Va. Sup. Ct. R., Pt. 6, § IV, ¶ 13-28.B.

1

On March 12, 2019, Washburn submitted just such an affidavit to the VSB. In that affidavit, she admitted to a key part of the misconduct charged in this case. In her First Motion in Limine, Washburn contends that VSB Rule 13-28.B precludes the United States from introducing her affidavit in this federal criminal trial, including on cross-examination of the Defendant herself, should she elect to testify.

As a threshold matter, while the Government believes that Washburn's affidavit is admissible as substantive evidence, it does not currently intend to introduce the affidavit during its case-in-chief. Nonetheless, should the Defendant elect to take the stand in her own defense – and testify inconsistently with the statements in the affidavit – the Government would seek to impeach her with the affidavit. And the Government is entitled to do so. First, the affidavit is admissible as substantive evidence. A state bar rule simply cannot limit otherwise-admissible evidence in federal criminal trials without running afoul of the Supremacy Clause of the U.S. Constitution and Federal Rules of Evidence. Second, even if the affidavit were not admissible as substantive evidence, it would still be admissible for impeachment purposes. By its own terms, VSB Rule 13-28B does not prohibit any *use* of the affidavit, but only prohibits using it as an "admission." Moreover, state bar rules cannot serve as a shield for perjury. If Washburn elects to take the stand, her sworn statements to the VSB should be admissible for impeachment purposes.[1]

**FACTUAL BACKGROUND**

Defendant Cherie Ann Washburn is a former attorney licensed by the VSB. *See Indictment* at ¶ 2 (ECF No. 3). Beginning in 2015, she began practicing with the law firm Wetzel & Washburn,

---

[1] Other statements made by Washburn to the VSB during its investigation, including email communications and statements during an interview with VSB investigators, are not covered by Rule 13-28B. Thus, subject to the limitations of Rules 401 and 403, there is no question as to their admissibility as substantive evidence. *See* Fed. R. Evid. 801(d)(2). The Government *does* intend to introduce such statements during its case-in-chief.

PLLC, specializing in elder law and estate planning. *Id.* ¶ 3. The Government alleges that, between November 2015 and February 2019, Washburn served as power of attorney for two elderly clients, C.A. and D.F. *Id.* ¶ 5-7. During this period, she routinely used these clients' funds to pay for numerous personal expenses and other improper purposes. *Id.* ¶ 8.

Around August of 2018, the VSB began in investigation into Washburn's conduct as power of attorney for C.A. and D.F.[2] *See* Def. Mot. in Limine, Ex. 1 at ¶ 4. Before the investigation concluded, however, Washburn entered into a Consent to Revocation with the VSB. Washburn's affidavit consenting to revocation, dated March 12, 2019, included the following statements:

- My consent to revocation is freely and voluntarily rendered. I am not being subjected to coercion or duress, and I am fully aware of the implications of consenting to the revocation of my license to practice law in the Commonwealth of Virginia. Aff. at ¶ 3.

- In or about August 2018, the Virginia State Bar received a complaint . . . alleging that, when acting in a fiduciary capacity and holding the power of attorney for an elderly ward, I had misappropriated substantial amounts of money from that elderly ward. Aff. at ¶ 4.

- I acknowledge that the material facts upon which the allegations of misconduct are predicated are true and would constitute violations of the Virginia Rules of Professional Conduct. Aff. at ¶ 5.

- I know that if the disciplinary proceedings based on the alleged misconduct were brought or prosecuted to a conclusion, I could not successfully defend them. Aff. at ¶ 6.

On March 19, 2019, the VSB Disciplinary Board revoked Washburn's license to practice law. *In re Washburn*, VSB Docket No. 19-090-113267 (Mar. 19, 2019).

On October 1, 2020, a federal grand jury in the Western District of Virginia indicted Washburn for federal offenses arising from the same conduct investigated by the VSB. The

---

[2] In fact, VSB received a complaint regarding Washburn's handling of C.A.'s finances in May 2018. VSB declined to investigate. However, on August 9, 2018, Washburn self-reported – and denied – an accusation made to Adult Protective Services ("APS") regarding her alleged misuse of C.A.'s funds. Shortly thereafter, APS submitted two complaints to the VSB: one on August 13 regarding Washburn's handling of C.A.'s finances, and a second on August 14 regarding victim D.F. The VSB investigation focused on the complaint involving C.A. and Washburn ultimately consented to revocation only in connection with those allegations.

3

Indictment charges Washburn ten counts of wire fraud in violation of 18 U.S.C. §§ 1343 & 1349, one count of mail fraud in violation of 18 U.S.C. §§ 1341 & 1349, and two counts of making false statements to mortgage lenders in violation of 18 U.S.C. § 1014. ECF No. 3.

## LEGAL STANDARD

A district court's inherent authority to manage trials permits it to make pretrial determinations regarding the admissibility of evidence. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Rulings on the admission of evidence at trial "are committed to the sound discretion of the district court." *United States v. Bostian,* 59 F.3d 474, 480 (4th Cir. 1995), *cert. denied,* 516 U.S. 1121 (1996). Accordingly, an appellate court can reverse the district court's evidentiary rulings only if the district court abused its discretion. *Id.*

## ARGUMENT

Evidence is relevant if it "has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is admissible unless otherwise prohibited by the U.S. Constitution, a federal statute, another rule of the Federal Rules of Evidence, or another rule prescribed by the United States Supreme Court. Fed. R. Evid. 402.

In this case, the Federal Rules of Evidence permit the introduction of Washburn's affidavit. The statements are relevant because they make it more likely that Washburn committed the fraud alleged in the indictment. *See* Fed. R. Evid. 401. And Washburn does not claim that any of the sources articulated in Rule 402 prohibit the introduction of her affidavit. Instead, Washburn argues that VSB Rules prohibit the government from any mention or use of her affidavit consenting to revocation. Mot. at 2–5; Va. Sup. Ct. R., Pt. 6, § IV, ¶ 13-28.B. She contends that principles of comity dictate strict enforcement of this rule, even in federal criminal proceedings. Mot. at 3, 4.

4

Washburn's argument misses the mark: "although principles of comity command careful consideration . . . where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields." *United States v. Gillock*, 445 U.S. 360, 373 (1980). Simply put, a state bar rule cannot preclude federal courts from admitting otherwise-admissible evidence in a federal criminal prosecution. Moreover, Washburn's proposed restrictions go beyond the language of the rule. Thus, even if the VSB Rule could restrict the use of the affidavit as substantive evidence, nothing in Rule 13-28B prevents the government from using the affidavit as impeachment material.

1. **Washburn's affidavit is admissible as substantive evidence because state law cannot supersede or limit federal rules of evidence in a federal criminal proceeding.**

    a. <u>State evidentiary rules do not apply to a federal criminal prosecution.</u>

    Washburn argues that VSB Rule 13-28B precludes a federal court from admitting highly probative evidence of her guilt. Such an interpretation runs afoul of the Supremacy Clause. *See generally* U.S. Const. Art. VI, cl. 2. Specifically, Washburn's position directly contravenes the Federal Rules of Evidence. Rule 402 provides an "exclusive list" for sources of admissibility: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." *United States v. Lowery*, 166 F.3d 1119, 1125 (11th Cir. 1999) (citing Fed. R. Evid. 402).

    Simply put, state evidentiary rules do not apply to federal criminal prosecutions. In *United States v. Gillock*, the Supreme Court held that a state legislator charged with federal crimes could not invoke the Tennessee constitution's speech and debate clause to exclude evidence. *Gillock*, 445 U.S. at 360. According to the Court, "the fact that there is an evidentiary privilege under the Tennessee Constitution, Art. II, § 13, which Gillock could assert in a criminal prosecution in state

5

court does not compel an analogous privilege in a federal prosecution." *Id*. at 368. The Court concluded:

> Congress might have provided that a state legislator prosecuted under federal law should be accorded the same evidentiary privileges as a Member of Congress. Alternatively, Congress could have imported the "spirit" of [*Erie*] into federal criminal law and directed federal courts to apply to a state legislator the same evidentiary privileges available in a prosecution of a similar charge in the courts of the state. But Congress has chosen neither of these courses. In the absence of a constitutional limitation on the power of Congress to make state officials, like all other persons, subject to federal criminal sanctions, we discern no basis in these circumstances for a judicially created limitation that handicaps proof of the relevant facts.

*Id.*. at 374. In this case, Washburn points to no authority holding that Congress intended for a state law like VSB Rule 13-28B to circumscribe the Federal Rules of Evidence. Tellingly, even in criminal cases under the Assimilated Crimes Act, 18 U.S.C. § 13, federal courts do not apply state evidentiary limitations. *See, e.g., United States v. Card*, 924 F.2d 1053 (Table), 1991 WL 8478 (4th Cir. 1991) (law enforcement's non-compliance with Virginia statute governing blood-alcohol test irrelevant to admissibility of evidence in federal criminal case).

    b. *Even where state bar rules apply in federal criminal cases, those rules cannot be read to alter federal law.*

Nonetheless, Congress has evinced a desire to apply some state bar rules to federal criminal prosecutions. Specifically, federal prosecutors are required to adhere to state bar rules of professional conduct. 28 U.S.C. § 530B. Such rules, however, may not "alter federal substantive, procedural, or evidentiary law." 28 C.F.R. § 77.1(b) (implementing 28 U.S.C. § 530B); *see also Stern v. U.S. Dist. Ct.*, 214 F.3d 4, 20 (1st Cir. 2000) (regulations implementing 28 U.S.C. § 530B "dispel the notion that section 530B grants states and lower federal courts the power, in the guise of regulating ethics, to impose strictures that are inconsistent with federal law"). Thus, to the extent an applicable rule infringes upon federal law, the state rule must yield.

6

The Eleventh Circuit directly addressed the intersection of state bar rules and admissibility of evidence in a criminal trial in *United States v. Lowery*, 116 F.3d at 1125. In *Lowery*, the district court excluded testimony by cooperating co-conspirators on the grounds that federal prosecutors had violated Florida Bar Rules of Professional Conduct in securing the cooperators' plea agreements. *Id*. at 1124. The Eleventh Circuit reversed. *Id*. at 1125. Assuming without deciding that prosecutors violated the state rule, the Eleventh Circuit declined to exclude the evidence. "[A] state rule of professional conduct cannot provide an adequate basis for a federal court to suppress evidence that is otherwise admissible. Federal law, not state law, determines the admissibility of evidence in federal court." *Id*. at 1124. The *Lowery* court cited the "paramount interest in enforcement of federal law," and concluded that "[s]tate rules of professional conduct, or state rules on any subject, cannot trump the Federal Rules of Evidence." *Id*. at 1125.

    c. *The Fourth Circuit has approved the use of an affidavit consenting to revocation as substantive evidence in a federal criminal case.*

Only one reported case in the Fourth Circuit appears to have addressed the admissibility of an affidavit consenting to revocation in federal court. Although the defendant moved to exclude evidence from the affidavit under Rule 403 of the Federal Rules of Evidence and not the VSB Rule, the Fourth Circuit upheld the use of a lawyer's affidavit consenting to revocation in a federal criminal trial. *United States v. Titus*, 475 F. App'x 826 (4th Cir. 2012) (per curiam). In *Titus*, a Virginia attorney defrauded his clients and investors. *Id*. at 828–30. In the face of an investigation by the VSB, Titus agreed to surrender his law license. *Id*. at 830. He was subsequently indicted and convicted on a host of fraud-related charges. *Id*. On appeal, Titus argued that the trial court should not have admitted evidence from his affidavit consenting to revocation. *Id*. at 833. In the affidavit, Titus had admitted to "unsavory conduct," including descriptions of financial irregularities in his accounting and instances of untruthfulness to State Bar officials. *Id*. at 833–34.

7

The Fourth Circuit concluded that the trial judge properly conducted a Rule 403 analysis and rejected Titus' argument. *Id*. at 834.

    d. *The civil cases Washburn cites involve doctrines irrelevant to a federal criminal case.*

Finally, none of the cases Washburn cites – all of them civil – apply in this context. A number of these cases involve collateral challenges to state bar proceeding. *See Konan v. Sengel*, 239 F. App'x 780, 781 (4th Cir. 2007) (per curiam) (bringing § 1983 complaint for damages against VSB for due process and equal protection violations arising from disbarment); *Motley v. Va. State Bar*, 403 F. Supp.2d 468, 470 (E.D. Va. 2005) (challenging disbarment based on, *inter alia*, evidence obtained in violation of the Fourth Amendment); *Allstate Ins. Co. v. West Virginia State Bar*, 233 F.3d 813, 817 (4th Cir. 2000) (bringing First Amendment challenge to state bar determination that insurance company engaged in unauthorized practice of law). In each case, the federal court concluded that a bar proceeding constituted a final judgment of a state court. Thus, the federal court lacked jurisdiction under the *Rooker-Feldman* doctrine to hear a case that implicated a challenge to that state court judgment. These considerations have no applicability whatsoever in a criminal case predicated on violations of federal criminal law.

Washburn also argues that *Hottle v. Beech Aircraft Corp.*, 47 F.3d 106 (4th Cir. 1995), requires this Court to deviate from the Federal Rules of Evidence when they "encroach upon a state's substantive law." Mot. at 3. But *Hottle* addressed whether a court should apply a state's evidentiary exclusion rule when sitting in diversity. In effect, the Fourth Circuit found that the Virginia evidentiary rule at *Hottle* was so interconnected with substantive state law as to be part and parcel with the state rule of decision. *Hottle*, 47 F.3d at 109; *see also Creekmore v. Maryview Hospital*, 662 F.3d 686, 690-93 (4th Cir. 2011) (same).

Similarly, the cases Washburn cites addressing admissibility of statements to the Virginia Employment Commission, VA. CODE ANN. § 60.2-623(B), involved application of a state law for a federal court sitting in diversity. *Konjevich v. Washing Sys.*, 23 F.3d 401 (Table) (4th Cir. 1994) ("While this court agrees that *Erie* requires that federal courts apply federal procedural rules, it does not agree that *Erie* would permit a federal court to ignore a state statute regarding administrative policy."); *Shabazz v. PYA Monarch, LLC*, 271 F. Supp. 2d 797 (E.D.Va. 2003) (holding that information furnished to VEC inadmissible in defamation case removed to federal court on basis of diversity). In short, as in *Hottle*, these cases address a state evidentiary rule closely intertwined with the state substantive law supplying the rule of decision. As the Supreme Court made clear in *Gillock*, there is no comparable consideration in a federal criminal case.

2. **Even if the state bar rule prevented the affidavit's admission as substantive evidence, Washburn can still be impeached with statements from her affidavit.**

Assuming, *arguendo*, that VSB Rule 13-28B prevents the government from using the affidavit in its case-in-chief, Washburn's statements should still be admissible for impeachment purposes. First, by its own terms, the VSB Rule only prohibits introducing the affidavit as "an admission" in another proceeding. The Federal Rules of Evidence distinguish between admissions by a party opponent that are admissible as substantive evidence and prior inconsistent statements for impeachment purposes. *Compare* Fed. R. Evid. 801(d)(2) and 613(b); *see also United States v. Ince*, 21 F.3d 576, 579 (4th Cir. 1994) (prior inconsistent statement that is inadmissible as hearsay may be admissible for limited purpose of impeachment). This limitation stands in contrast to the VEC statute Washburn cites in support of her position. Virginia Code Section 60.2-623(B) directs that no information "shall be *used* in any judicial or administrative proceeding other than one arising out of this title." VA. CODE ANN. § 60.2-623(B). By its express terms, the VSB rule does not purport to eliminate the affidavit's use entirely.

9

Second, if Washburn takes the stand and testifies contrary to her sworn affidavit, the VSB Rules should not operate as a blank check for perjury. The Supreme Court has routinely held that certain evidence excluded as violative of federal constitutional rights may still be utilized for impeachment purposes. *See Walder v. United States*, 347 U.S. 62, 65 (1954) ("It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths."); *Harris v. New York*, 401 U.S. 222, 226 (1971) (permitting statements taken in violation of *Miranda* to be used for impeachment); *Kansas v. Ventris*, 556 U.S. 586, 594 (2009) (permitting statements taken in violation of the Sixth Amendment to be used for impeachment). If evidence obtained in violation of a defendant's constitutional rights can be admissible for impeachment purposes, then evidence excluded due to a state bar rule should certainly be available for the same purpose. The interests in enforcing federal constitutional rights dwarf any interests implicated by state bar rules. And the rationale applicable in *Walder*, *Harris*, and *Ventris* operates with the same force here: "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury." *Harris*, 401 U.S. at 225.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny Defendant's First Motion in Limine.

Respectfully submitted,

DANIEL P. BUBAR
Acting United States Attorney
for the Western District of Virginia

10

/s/ Michael A. Baudinet
Michael A. Baudinet (VSB No. 83633)
Assistant United States Attorney
United States Attorney's Office
P.O. Box. 1709
Roanoke, VA 24008
TEL (540) 857-2250
FAX (540) 857-2614
Michael.Baudinet@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2021 I electronically filed the foregoing Response in Opposition to Defendant's First Motion in Limine with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Michael A. Baudinet
Assistant United States Attorney
VSB # 83633
