CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

5/21/2021

JULIA C. DUDLEY, CLERK
BY:  s/ CARMEN AMOS
      DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE No. 6:20-cr-00013 |
| v. | MEMORANDUM OPINION & ORDER |
| CHERIE ANNE WASHBURN, *Defendant.* | JUDGE NORMAN K. MOON |

Defendant Cherie Anne Washburn is a former attorney licensed to practice in Virginia, who held herself out as specializing in elder law and estate planning. A federal grand jury has indicted her on ten counts of wire fraud, one count of mail fraud, and two counts of making false statements to a mortgage lender. Washburn has moved the Court to exclude as evidence from trial an affidavit Washburn filed with the Virginia State Bar in which she consented to revocation of her license to practice. For the following reasons, Washburn's motion will be denied.

### Charges Against Washburn

As alleged in the indictment, a business that provides care management services for senior citizens referred C.A. and D.F. to Washburn for elder legal services. Dkt. 3 at 2. In November 2015, Washburn entered into a "Senior Legal Services Contract" and a Power of Attorney Agreement ("POA Agreement") with C.A., who appointed Washburn as C.A.'s Power of Attorney for financial matters. Id. In May 2016, D.F. appointed Washburn as D.F.'s Power of Attorney for financial matters. Id. The POA Agreement in both cases stated that the Power of Attorney "MAY NOT use my property to benefit the agent or a person to whom the agent owes an obligation of support unless I have included that authority in the Special Instructions." Id.

1

And no such authority was included in the "Special Instructions" of the POA Agreement in either instance. Id. at 2–3.

The indictment alleges that Washburn used her position as C.A. and D.F.'s Power of Attorney "to misappropriate and attempt to misappropriate money and property belonging to C.A. and D.F. for her own personal benefit," and "regularly used funds obtained from the victims to pay for personal expenses …." Id. at 3. Washburn is charged with committing ten counts of mail fraud from November 2016 to April 2018, by cashing or depositing checks or entering wire transfers from C.A.'s and D.F.'s accounts, which money went either directly to Washburn or for her other personal uses rather than C.A.'s and D.F.'s benefit. See id. at 8–9. The indictment also alleges that Washburn used about $50,000 of C.A.'s funds for a real estate investment Washburn made and for which she pocketed a $5,000 return. Id. at 5–6. The indictment further alleges that Washburn engaged in a scheme to buy a property in Lynchburg for her own use, using funds belonging to C.A., and making numerous false statements to the mortgage lender in the process. Id. at 6–9.

<u>Washburn's Affidavit to the Virginia State Bar</u>

As Washburn states in her motion in *limine*, she was licensed to practice law in Virginia in 2011. In August 2018, the Virginia State Bar ("VSB") opened an investigation after receiving a complaint of professional misconduct against Washburn. Dkt. 34 at 1. Thereafter, Washburn consented to revocation of her law license. Id. Washburn submitted to the VSB an "Affidavit Declaring Consent to Revocation" (the "Affidavit"), in which she stated

> 4.  I am aware that there is currently pending a complaint, an investigation into, or a proceeding involving, allegations of misconduct, the docket number(s) for which is set forth above. In or about August 2018, the Virginia State Bar received a complaint from an employee of Adult Protective Services in Lynchburg, Virginia, alleging that, when acting in a fiduciary capacity and holding the power of attorney for an elderly ward, I had misappropriated substantial amounts of money

2

from that elderly ward. The complaint also stated that, as of the time of the complaint, I had not provided reasonable explanations for some expenditures, had declined to answer questions about some expenditures, and had failed to provide some supporting documentation.

5.  I acknowledge that the material facts upon which the allegations of misconduct are predicated are true and would constitute violations of the Virginia Rules of Professional Conduct.

6. I submit this Affidavit and consent to the revocation of my license to practice law in the Commonwealth of Virginia because I know that if the disciplinary proceedings based on the alleged misconduct were brought or prosecuted to a conclusion, I could not successfully defend them.

Dkt. 34-1 at 1–2.

Washburn submitted the Affidavit pursuant to Virginia Supreme Court Rules, Part 6, § IV, ¶ 13-28.A.[1] Dkt. 34-1 at 1. Pursuant to Rule 13-28.B, "[t]he admissions offered in the affidavit consenting to Revocation <u>shall not be deemed an admission</u> in any proceeding except one relating to the status of the Attorney as a member of the Bar." (Emphasis added).

Washburn's Motion in <i>Limine</i>

Washburn has filed a motion in *limine* in which she "seeks a pre-trial ruling that forecloses any mention or other use of the Affidavit in front of the jury." Dkt. 35 at 2. Washburn argues that this Court should prohibit any reference to the Affidavit based upon Rule 13-28.B, asserting that this Court to afford Rule 13-28.B "substantial comity and strict enforcement." Dkt. 35 at 2–3. As Washburn explains it, "[t]he rule is a substantial safeguard that promotes the VSB's interest in bringing investigations of professional misconduct to a swift resolution." Id. at 3. In other words, "[i]n exchange for surrendering her valuable property right to practice law, the lawyer under investigation is guaranteed her sworn stipulations to unprofessional conduct

---

[1]  <u>See</u> Va. State Bar, Professional Guidelines, Rule 13-28 (Consent to Revocation), https://www.vsb.org/pro-guidelines/index.php/bar-govt/procedure-for-disciplining-suspending-and-disbarring-attorneys/13-28.

shall not be used to prosecute her in another forum." Id. at 3. Accordingly, because she views it as a "substantive protection" rather than a rule of "procedure," Washburn argues that this Court "should reject any argument by the government that [Rule 13-28.B] is a state procedural rule that does not apply in a criminal proceeding governed by the Federal Rules of Evidence." Id. And further, because "[a]llowing the United States to inject Washburn's Affidavit into her trial would undermine" Virginia's state judicial policies, Washburn argues that "[f]undamental principles of comity" demand the Court should hold that Rule 13-28.B "requires exclusion of the Affidavit from Washburn's trial." Id. at 4–5.

In its opposition, the Government clarifies that "while the Government believes that Washburn's affidavit is admissible as substantive evidence, it does not currently intend to introduce the affidavit during its case-in-chief." Dkt. 39 at 2. However, "should [Washburn] elect to take the stand in her own defense—and testify inconsistently with the statements in the affidavit—the Government would seek to impeach her with the affidavit." Id. First, the Government argues that the Affidavit is admissible as substantive evidence, and that any state bar rule otherwise limiting it would "run[ ] afoul of the Supremacy Clause of the U.S. Constitution and Federal Rules of Evidence." Id. Second, the Government contends that, in any event, the Affidavit "would still be admissible for impeachment purposes" even were it not admissible as substantive evidence. Id.

In reply, and notwithstanding the Government's proposed limitation on its intended use of the Affidavit, Washburn continues to argue that the Government should be precluded from using the Affidavit "as impeachment material at trial." Dkt. 40 at 1. Washburn contends that, "[u]nder Fourth Circuit precedent, trial courts must balance the state's interest in enforcement of an exclusionary rule that exists under state law against the federal government's interest in

overcoming the restrictive rule in a criminal prosecution." Id. at 2. "Applying this balancing

test," the Court should grant her motion in *limine*. Id. at 3. This day, May 21, 2021, the Court

heard argument on Washburn's motion in *limine*.

Analysis

The parties have both cited United States v. Gillock, 445 U.S. 360 (1980), and United

States v. Cartledge, 928 F.2d 93 (4th Cir. 1991), as providing a framework for how a court

should determine the potential applicability of a state-created privilege in a federal criminal case.

See Dkt. 39 at 5; Dkt. 40 at 2. At the outset, "federal privilege law controls," Cartledge, 928 F.2d

at 96, and "the fact that there is an evidentiary privilege" under a state law the defendant "could

assert in a criminal prosecution in state court does not compel an analogous privilege in a federal

prosecution," id. (quoting Gillock, 445 U.S. at 368). Those two decisions held that a "balancing

test" between the "competing federal and state interests" was appropriate. Id. at 96. Notably,

those decisions held that federal interests in enforcement of federal criminal statutes outweighed

any competing state interests in those cases. Gillock, 445 U.S. at 373 ("[A]lthough principles of

comity command careful consideration, our cases disclose that where important federal interests

are at stake, as in enforcement of federal criminal statutes, comity yields …."); Cartledge, 928

F.2d at 97 (holding that "[t]he federal interest involved is, as in Gillock, enforcement of the

federal criminal statutes," which interest "outweighs any state interest which might be implicated

under this [state] statute"). In this case and at this juncture, however, the Court does not find that

the state and federal interests are in fact "competing."

Washburn invokes Virginia Rule 13-28.B, which states that "[t]he admissions offered in

the affidavit consenting to Revocation shall not be deemed an admission in any proceeding

except one relating to the status of the Attorney as a member of the Bar." Assuming this VSB

5

Rule should be held to apply in this federal prosecution as a matter of comity, Rule 13-28.B's plain language shows it does not bar the Government's proposed use of the Affidavit. The Government does not seek to introduce the Affidavit as "an admission" in this prosecution. Indeed, it "does not currently intend to introduce the affidavit during its case-in-chief." Dkt. 39 at 2. Rather, the Government has stated that, "should [Washburn] elect to take the stand in her own defense—and testify inconsistently with the statements in the affidavit—the Government would seek to impeach her with the affidavit." Id. Simply put, Rule 13-28.B states that such an affidavit "shall not be deemed an admission" in another proceeding, and since the Government does not plan to use it as such, it would not run afoul of the Rule. Notably, the Rule does not include a broader and more general prohibition against any other use of the affidavit. For instance, the text of Rule 13-28.B is substantially different from the Virginia statute cited by Washburn, which prohibits information furnished to the Workers' Compensation Commission from "be[ing] used in any judicial or administrative proceeding other than one arising out of the provisions of this title." Va. Code § 60.2-623 (emphasis added).[2]

Moreover, ample authority supports the use of the Affidavit in the limited manner proposed by the Government—as impeachment material only if Washburn elects to testify and testifies inconsistently with the statements she made in the Affidavit. Indeed, the Supreme Court has consistently permitted even those defendants' statements that were elicited in violation of the

---

[2] For this reason, the civil cases cited by Washburn applying Va. Code § 60.2-623 are inapposite. See Konjevich v. Wash. Sys., Inc., 23 F.3d 401, at *2 (4th Cir. 1994) (table) (holding in case raising claims of breach of contract and state-law tort claims that district judge did not err in refusing to consider Virginia Employment Commission report, given that Va. Code § 60.2-623 "precludes the use of information provided to the Virginia Employment Commission in any judicial or administrative proceeding"); Shabazz v. PYA Monarch, LLC, 271 F. Supp. 2d 797, 802 (E.D. Va. 2003) (holding in case alleging employer made defamatory statements about plaintiff to the Virginia Employment Commission that Va. Code § 60.2-623 prohibits use of reports submitted to the commission).

Sixth Amendment, or made without proper warning of <u>Miranda</u> rights, for impeachment purposes. <u>See</u> <u>Kansas v. Ventris</u>, 556 U.S. 586, 594 (2009) ("We have held in every other context that tainted evidence—evidence whose very introduction does not constitute the constitutional violation, but whose obtaining was constitutionally invalid—is admissible for impeachment."); <u>Harris v. New York</u>, 401 U.S. 222 (1971). Thus, weighing on this case are not only the important federal interests in ensuring the enforcement of the federal criminal statutes, <u>Gillock</u>, 445 U.S. at 373. There is a further interest in ensuring that the Government be afforded the "traditional truth-testing devices of the adversary process," as by the use of impeachment evidence, so that the defendant is not improperly provided "a shield against contradiction of his untruths." <u>Ventris</u>, 556 U.S. at 593.

Given the text of Rule 13-28.B, the Court does not think there are any "competing" interests between the Rule and enforcement of the federal criminal law. However, to be clear, even if there were tension or competition between the two and a balancing of competing interests were required under <u>Gillock</u> and <u>Cartledge</u>, the Court finds that the federal interests prevail. In other words, accepting the laudable and valuable purposes of the Rule articulated by Defendant in ensuring the swift resolution of VSB complaints, the Court finds that the federal interests in enforcing the federal criminal law and ensuring that the defendant not be provided "a shield against contradiction of his untruths" outweigh any contrary state interests.

Considering that the Court has found that the Government's proposed limited use of the Affidavit would not violate Rule 13-28.B; that the Fourth Circuit has affirmed the introduction of such an affidavit in another federal prosecution, <u>see</u> <u>United States v. Titus</u>, 475 F. App'x 826, 833–34 (4th Cir. 2012) (unpublished); and that Washburn has cited no authority or reason that

would prohibit the limited introduction of an affidavit like this for impeachment purposes in a federal prosecution, the Court will **DENY** her motion in *limine*. Dkt. 34.

For these reasons, the Court need not determine at this time whether introduction of the Affidavit for another purpose, or in the Government's case-in-chief, would be permissible. At argument, the Government stated that it did not intend to foreclose the possibility that it would later seek to introduce this Affidavit in its case-in-chief. Should the Government determine that it intends to use this Affidavit in its case-in-chief, the Court **DIRECTS** the Government to notify Defendant promptly and in no event later than **thirty (30) days** before trial.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion and Order to all counsel of record.

ENTERED this ___21st___ day of May, 2021.


NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE